Gloria **WILCOX**, Mary **McCann**, Carol **Shaw**, Laurie **Saucier**, Thomasina **Downing**, Pamela **Thoits Moreau** and Pamela **Smith**, each on behalf of herself and all others similarly situated, Plaintiffs,

v.

H. Rollin **IVES**, in his capacity as Commissioner of the Maine Department of Human Services, and The Maine Department of Human Services and Otis R. **Bowen**, in his capacity as Secretary of the United States Department of Health and Human Services, Defendants.

Civ. No. 85–0342–P.

United States District Court, D. Maine.

Dec. 29, 1987.

Thomas H. Kelley, Portland, Me., Mary T. Henderson, Pine Tree Legal Assistance, Augusta, Me., for plaintiffs.

Robert E. Mittel, Portland, Me., for Pam Moreau.

Katherine Greason, Raymond E. Ritchie, Christopher C. Leighton, Asst. Attys. Gen., Augusta, Me., for defendants.

Richard S. Cohen, U.S. Atty., Portland, Me., F. Mark Terison, David R. Collins, Asst. U.S. Attys., for Otis Bowen, Secretary of Health and Human Services; Joyce Elise McCourt, Asst. Regional Atty., Boston, Mass., of counsel.

Carmen L. Coulombe, Asst. Atty. Gen., Augusta, Me., for Michael R. Petit.

GENE CARTER, District Judge.

## MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT ON THE STIPULATED RECORD

This matter comes before the Court on the respective parties' motions for judgment on a stipulated record.

In this class action, Plaintiffs receive, or have received, public assistance through the Aid to Families with Dependent Children (AFDC) program. As a condition of receiving AFDC benefits, each Plaintiff has assigned her right to child support pay-

ments to the Maine Department of Human Services (DHS). However, the DHS must "pass through" to the recipient family the first $50 of a child support payment. 42 U.S.C. § 657(b)(1). Plaintiffs assert three causes of action against H. Rollin Ives, Commissioner of DHS;[1] DHS itself (hereafter "state Defendants"); and Otis R. Bowen, Secretary of the United States Department of Health and Human Services (hereafter "federal Defendant"). In Count I, Plaintiffs assert that the state Defendants violate Plaintiffs' rights pursuant to 42 U.S.C. § 657(b)(1) and 42 U.S.C. § 602(a)(28) by failing to "pass through" the first $50 of monthly child support payments to which Plaintiffs are entitled. Plaintiffs further assert that the federal Defendant's regulation, 45 C.F.R. § 302.51, which restricts the amount that DHS can "pass through" to Plaintiffs in a given month, also violates Plaintiffs' rights pursuant to 42 U.S.C. § 657(b)(1).

Count II asserts that the state Defendants violated Plaintiffs' rights pursuant to 42 U.S.C. § 651, *et seq.*, by failing to take adequate and necessary measures to insure timely payment of child support by absent parents, and that the federal Defendant violated Plaintiffs' rights by failing to insure that the Maine child support enforcement program was in compliance with federal law. After Defendants undertook several steps to remedy these problems, the parties agreed to stipulate to a dismissal of Count II without prejudice. The Court approved the settlement regarding Count II on September 8, 1987.

In Count III, Plaintiffs contend that Defendants have violated Plaintiffs' rights pursuant to 42 U.S.C. § 654(5) and the due process clauses of the Constitution's fifth and fourteenth amendments by failing to provide Plaintiffs with an accounting of child support collected, notice of amounts withheld, the reasons for any withholding, and an opportunity to challenge any withholding. In a partial consent decree, Plaintiffs and state Defendants agreed that Plaintiffs are entitled to written notice of

the amounts of child support collected by DHS through assignments of support rights from the Plaintiff class; written notice of the amounts of such support forwarded to Plaintiff class; an opportunity for an administrative hearing when there is a disagreement about the amount of support forwarded to the Plaintiff class; and written notice of the opportunity for such a hearing. The parties did not agree on the issue of "what class relief may be appropriate with respect to Count III." Partial Consent Decree at 2. Secretary Bowen did not enter the Partial Consent Decree. The Court approved the decree as to Plaintiffs and state Defendants on September 9, 1987.

For the reasons set out below, the Court finds that 45 C.F.R. § 302.51 impermissibly contradicts 42 U.S.C. § 657(b)(1) to the extent that the regulation prohibits the state Defendants from making multiple pass-through payments when DHS receives two or more support payments in a given month. The regulation is therefore invalid in that respect. The Court also finds that Plaintiffs are entitled to notice relief.

### Count I

■ The gravamen of Count I is Plaintiffs' assertion that the regulation, 45 C.F.R. § 302.51, impermissibly conflicts with 42 U.S.C. § 657(b)(1). The statute directs that a portion of the child support payment, when received by the state from the absent parent, be "passed through" to the AFDC recipient without affecting the recipient's eligibility for assistance:

> The first fifty dollars of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month.

42 U.S.C. § 657(b)(1). All parties agree that the statute requires the DHS to pass through to the family the first fifty dollars

---

**1.** Plaintiffs originally named Michael Petit as a defendant, since he was Commissioner of DHS at the time they filed their Complaint. Mr. Ives

was substituted for Mr. Petit, pursuant to Fed.R. Civ.P. 25(d), after Mr. Ives replaced Mr. Petit as Commissioner.

of each monthly payment that the DHS receives and processes in the month the payment is due. All parties also agree that the obligation to make the pass through is not created until the monthly support payment is collected by DHS. The dispute arises from the federal regulation's provision prohibiting state Defendants from passing through the first $50 of payments which are somehow delayed until a later month or which are made in a lump sum.

Defendants assert that an AFDC recipient is not entitled to a fifty-dollar pass-through unless DHS receives the support payment from the absent parent during the month in which the payment is due. The federal regulation provides, in pertinent part:

> The State plan shall provide as follows: (b)(1) Of any amount that is collected in a month which represents payment on the required support obligation for that month, the first $50 of such amount shall be paid to the family.... If the amount collected includes payment on the required support obligation for a previous month or months, the family shall only receive the first $50 of the amount which represents the required support obligation for the month in which the support was collected.... No payment shall be made to a family under this paragraph for a month in which there is no child support collection.

45 C.F.R. § 302.51. In effect, the regulation provides that only a single fifty-dollar pass-through may be forwarded to the AFDC recipient in cases where the absent parent fails to make any payment in one month but makes a multiple payment in a following month. Plaintiffs argue that under 42 U.S.C. § 657(b)(1), the AFDC family should receive a multiple pass-through payment whenever DHS receives a multiple support payment.

Plaintiffs contend that Defendants' policy adversely affects them in various ways. For example, the father of Plaintiff Wil-

cox's child is obligated under a divorce decree to pay $25 per week for child support directly to DHS. Stipulation Nos. 19–20. In March 1985, DHS received four checks for $25 each from the father, and DHS passed through $50 to Plaintiff Wilcox. Attachment C. DHS did not receive any checks from the father in April. *Id.* In May, DHS received a total of nine checks for $25 each from the father. *Id.* Each check represented a separate weekly support payment for April and May, as was indicated clearly on the bottom left-hand corner and the back of each check. Attachment D.[2] DHS passed through $50 from the support collected in May, but refused to pass through the first $50 of the amount collected for April because the payments were not received by DHS in April. Stipulation No. 22. At a subsequent administrative hearing on the matter, the DHS Hearing Officer expressly found that the $225 received by DHS in May included the support obligation for April. Attachment E. Nevertheless, the Hearing Officer determined that Defendants' policy precluded a pass-through for April because DHS did not receive the support payment until May. *Id.* Plaintiffs argue that Plaintiff Wilcox is entitled to a $50 pass-through for April because the payments fit within the requirements of the statute.

Plaintiffs are also affected adversely where a portion of the absent parent's wages are assigned to DHS for child support. For example, the father of Plaintiff Saucier's child is employed by a contractor in Waterville, Maine. Since June 1985, the father's employer has deducted $40 per week ($30 for current support and $10 for arrearages) from his wages, and forwards that amount to DHS. Stipulation No. 36. DHS did not receive any payments from the father's employer from July through September 1985, then received $400 on October 8 and $320 on December 6. Attachment C. DHS sent $50 pass-through checks to Plaintiff Saucier for October and

---

**2.** The checks were dated April 5, 12, 19, 26 and May 3, 10, 17, 24, 31. Each check indicated the period for which it was offered. For instance, on the check dated April 19, 1985, the bottom left-hand corner reads "4–19 to 4–26" and the

back reads "Responsible Parent/Wayne S. Kimball/ ... Recipient Gloria Wilcox/ ... Support–Scott Kimball/April 19–April 26, 1985." Attachment D.

December. *Id.* DHS refused to make multiple pass-throughs to Plaintiff Saucier, despite the fact that the October payment amounted to approximately two and one-half months of payments. Similarly, the payment received by DHS in December amounted to two months of wage assignments, but DHS refused to pass through $50 for November. Plaintiffs contend that the October and December payments should be split to reflect the number of monthly payments, and a $50 pass-through should be issued for each month. Thus, Plaintiff Saucier should have received five $50 pass-throughs (one each for August, September, October, November, and December) instead of the two $50 pass-throughs which she actually received.

Plaintiffs are also affected adversely by Defendants' policy when the absent parent makes payments on a quarterly, and not on a monthly, basis. Plaintiff Smith's former husband is obligated to pay $20 per week to DHS for child support. Stipulation No. 45. In 1985, he paid DHS $180 in June, $340 in September, $260 in December, and $260 in March 1986. Attachment C. DHS passed through $50 checks to Plaintiff Smith for the months of June, September, December, and March only, despite the fact that the payments represented 52 weekly payments. *Id.* Thus, the Defendants' policy resulted in only four $50 pass-throughs being made, even though the absent parent had paid the proper amount of support for an entire year. Under Plaintiffs' reading of the statute, Plaintiff Smith is entitled to twelve $50 pass-throughs, since, in the words of the statute, the payments (1) are amounts (2) which were collected periodically and (3) which represent monthly support payments.

After careful consideration, the Court concludes that the Secretary's regulation and the Commissioner's reliance upon it are inconsistent with 42 U.S.C. § 657(b)(1). The interpretation given a statute by the agency charged with its administration should be accorded great deference, but deference should never rise to the level of blind faith. *Committee for an Independent P–I v. Hearst Corp.,* 704 F.2d 467, 473 (9th Cir.1983), *cert. denied,* 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 228 (1983). The Supreme Court has instructed that a court reviewing an agency's interpretation of law should not "slip into judicial inertia," *Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), and reviewing courts "are not obliged to stand aside and rubber stamp" the agency. *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965). In addition, the Administrative Procedure Act states that "the reviewing court," not the agency, "shall decide all relevant questions of law." 5 U.S.C. § 706. *See Mayburg v. Secretary of Health & Human Services,* 740 F.2d 100, 105 (1st Cir.1984). Courts should not defer to an agency's construction of a statute when there are "compelling indications that it is wrong." *Espinoza v. Farah Manufacturing Co.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973) (quoting *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969)).

In this case there are clear indications that the Secretary has erred. Under the Secretary's regulation, DHS is prohibited from passing through the first $50 from a support payment unless DHS receives the payment during the month for which it is due. Yet there is nothing contained in the statute indicating that Congress intended DHS to refuse to pass through the first $50 of a delayed support payment. As the Court has previously noted, the Secretary's regulation penalizes the recipient family for circumstances entirely beyond its control. *Wilcox v. Petit,* 649 F.Supp. 685, 687 (D.Me.1986).[3] No rational purpose is served by denying child support to a needy family because an employer failed to forward promptly funds withheld from the

---

**3.** With respect to this point, "[t]he State concurs ..., but has always felt constrained by the explicit language of the regulations by the Department of Health and Human Services which limit how payments are to be treated. 45 C.F.R. § 302.51(b)(1)." State Defendant's Memorandum in Support of its Motion for Judgment on the Stipulated Record at 3.

absent parent's paycheck, because the absent parent did not send the payment on time, or because DHS did not enter the money in its records when the money was received. *Id.*

Nor is the Secretary's regulation consistent with the underlying policy considerations of the statute. While the legislative history of this provision is sketchy, it is clear that Congress meant to provide an economic incentive for the absent parent's payment of child support. *Id.* It does not require much reflection to understand that an absent parent is less likely to continue to comply with his or her support obligations if the payments are delivered to DHS, but never passed through to the recipient family. An interpretation of the legislation that allows a result so clearly contrary to the objective of encouraging the payment of child support does not accurately represent the true intent of Congress in enacting the statute. *Id.*

The federal regulation is also antithetical to one of the general purposes of the AFDC program: to ensure that parents or guardians are financially able to provide for their children. 42 U.S.C. § 601. By proscribing the pass-through of $50 for a given month because the support payment arrived at DHS several days late, the regulation leaves the recipient family less able to provide for the dependent children.

Most important, the regulation is inconsistent with the language of the statute. Under 42 U.S.C. § 657(b)(1), DHS should pass through the first $50 of (1) amounts collected by DHS as support (2) which were collected periodically and (3) which represent monthly support payments. *Beasley v. Harris,* 671 F.Supp. 911, 918 (D.Conn. 1987).[4] Despite Defendants' arguments,[5] "periodically" is not synonymous with "monthly."[6] Instead, "periodically," as used in this statute, means "from time to time." Webster's Third New International Dictionary (1981).[7]

To the extent that 45 C.F.R. § 302.51 requires DHS to make only one pass-through payment during a month in which two or more support payments are collected, it is inconsistent with the will of Congress as expressed in the statute. *See Wilcox v. Petit,* 649 F.Supp. at 687; *Beasley v. Harris,* 671 F.Supp. at 919 ("The regulation is totally at odds with the statute.") Therefore, the regulation is invalid.

---

**4.** At the hearing on November 4, 1987, the Court asked each party to comment on the *Beasley* case. Neither Plaintiffs nor state Defendants had read it, so the Court invited the parties to address the *Beasley* opinion in writing. None of the parties responded to the Court's invitation.

**5.** Federal Defendant claims that "for the purposes of 657(b)(1) ... the 'periodic' amount representing monthly child support is the current month's obligation. From each current month's obligation, the first $50 bonus is paid to the family." Federal Defendant's Memorandum in Support of his Motion for Judgment on the Stipulated Record at 11.

**6.** In *Wilcox v. Petit,* 653 F.Supp. 709, 710–11 (D.Me.1987), the Court addressed this point:

> The language of the statute in question is cumbersome, but it is not ambiguous. It reads:
> the first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family.... 42 U.S.C. § 657(b)(1).
> An amount which represents a monthly support payment is simply the amount of the monthly support obligation (much as "an amount that represents a year's salary" means

the amount that one earns in a year, or "an amount that represents a monthly mortgage payment" means the amount of the monthly mortgage obligation). The statute instructs that the first fifty dollars of such an amount, once collected by the government, be forwarded to the recipient family. Its use of the term "collected periodically" is clearly intended to provide flexibility that would not be present if the term "collected monthly" were used. Under the interpretation offered by the Secretary ... "monthly support payments" would have to mean the amount received in a month rather than the amount owed, and the word "periodically" would have to be dropped from the statute and replaced with the word "monthly." This is an unreasonable interpretation of the statute.

**7.** The other definition of "periodically" ("at regular intervals of time") is inappropriate in this statute. Otherwise, the statute would be read to mean that DHS could pass through the first $50 only if DHS collected the payments at regular intervals of time. Congress could not have meant such an arbitrary result, as it would have excluded all payments made by those absent parents who are seasonally employed or subject to lay-offs.

*United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977).

### Count III

As a result of the Partial Consent Decree, the outstanding issue remaining for the Court on Count III is "what class relief may be appropriate." Partial Consent Decree at 2.[8] Plaintiffs request "informational notice relief ... of the type authorized by the Supreme Court in *Quern v. Jordan,* 440 U.S. 332 [99 S.Ct. 1139, 59 L.Ed.2d 358] (1979)." Plaintiffs Memorandum in Support of Motion for Summary Judgment on the Stipulated Record at 14–15. Defendants argue that the eleventh amendment bars any form of notice relief to Plaintiffs.

The eleventh amendment bars the Court from awarding retroactive welfare benefits to Plaintiffs where the State does not consent to suit, *Edelman v. Jordan,* 415 U.S. 651, 664–65, 94 S.Ct. 1347, 1356–57, 39 L.Ed.2d 662 (1974), and "[t]he Maine Legislature has not enacted any law manifesting consent that the state be subject to suit for retroactive AFDC benefits." *Thiboutot v. State,* 405 A.2d 230, 233 (Me. 1979), *aff'd,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Nevertheless, a federal court may order the state to notify a plaintiff class of the existence of administrative procedures already available under state law by which they may receive a determination of eligibility for past benefits. *Quern v. Jordan,* 440 U.S. at 347–48, 99 S.Ct. at 1148–49. The eleventh amendment does not prevent a federal court from ordering the state to send a notice to the plaintiff class if the notice is identical to the one sent by the state where the state denies or reduces a person's welfare benefits. *Id.* at 348, 99 S.Ct. at 1149.

The mere sending of that notice does not trigger the state administrative machinery. Whether a recipient of notice decides to take advantage of those available state procedures is left completely to the discretion of that particular class member; the federal court plays no role in that decision. And whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court.

*Id.* The eleventh amendment proscribes notice relief that triggers the state administrative machinery or relates exclusively to retroactive relief. *Id.*[9]

DHS has already established an administrative fair hearing process for recipients who claim that DHS has improperly withheld the first $50 of a support payment. Stipulation No. 66. Plaintiffs are entitled to know of this administrative procedure. Thus, the Court directs the Plaintiffs to submit a proposed notice which complies with the requirements set forth in *Quern.*[10]

Defendants argue that Plaintiffs are precluded from notice relief, citing *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). However, in *Green,* the plaintiff's claims for prospective relief were rendered moot prior to the lower court's order, thus leaving plaintiffs with claims for retroactive relief only. *Id.* at 68–69, 106 S.Ct. at 425–426. Because there

---

**8.** In their Memorandum, Plaintiffs requested the Court to find that the state Defendants are entitled to federal reimbursement for the administrative costs associated with providing notice and an opportunity to be heard. At the hearing, however, Plaintiffs effectively withdrew this request.

**9.** In *Quern,* the Court laid out the general contents of the notice:

The notice in effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue. Petitioner raises no ob-

jection to the expense of preparing or sending it. The class members are 'given no more ... than what they would have gathered by sitting in the courtroom.' *Jordan v. Trainor,* 563 F.2d [873] at 877–78 [ (7th Cir.1977) ].

*Id.* 440 U.S. at 349, 99 S.Ct. at 1149.

**10.** At the hearing, counsel for Plaintiffs were unprepared to offer a proposed notice, and requested that they be permitted to submit a draft notice after the Court determined whether notice relief is justified. The parties disagreed as to the best method for notifying the Plaintiff Class, but were unprepared to discuss the alternative methods in detail.

was no continuing violation of federal law to enjoin, the Court said that notice could not be "justified." *Id.* at 71, 106 S.Ct. at 427. The case at bar is clearly distinguishable from *Green,* as there is a continuing violation of federal law in the present case which the Court will enjoin. The notice in this case will not address retrospective relief exclusively. Thus, the notice at issue here falls within the rule found in *Quern; Green* is not controlling.

Accordingly, it is hereby DECREED and ORDERED as follows:

(1) Plaintiffs' Motion for Entry of Judgment on the Stipulated Record is GRANTED; and it is ADJUDGED that:

(a) 45 C.F.R. § 302.51 impermissibly conflicts with 42 U.S.C. § 657(b)(1) to the extent that the regulation prevents Defendant H. Rollin Ives, Commissioner, Department of Human Services, from making multiple pass-through payments when DHS receives multiple support payments in a given month;

(b) Defendant H. Rollin Ives, Commissioner, Department of Human Services, his agents, employees, attorneys, and those in active concert and participation with them, are hereby *ORDERED* to *DESIST* from enforcing 45 C.F.R. § 302.51 to the extent that it prevents DHS from passing through the first $50 of a support payment which is collected by DHS after the month in which it is due;

(2) Defendant H. Rollin Ives, Commissioner, Department of Human Services, his agents, employees, attorneys, and those in active concert and participation with them, are hereby *ORDERED* to notify each member of the Plaintiff Class that the suit is at an end, that the federal court has provided the relief as set forth above, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue;

(3) Plaintiffs shall file a proposed Notice to Plaintiff Class within fifteen (15) days of the date of this Order. Plain-

tiffs shall also propose the most effective method of notifying the Plaintiff class. Defendants will respond to Plaintiffs' proposed Notice and method of notifying the Plaintiff Class pursuant to Local Rule 19;

(4) Defendant H. Rollin Ives will cause the notices to be sent to Plaintiff Class within sixty (60) days of the Court's approval of such notice; and

(5) Defendants' motions for judgment are hereby DENIED.