Janice FARLEY, et al.

v.

**DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued Feb. 3, 1993.
Decided March 2, 1993.

Thomas H. Kelley (orally), Pine Tree Legal Assistance, Inc., Portland, for plaintiffs.

Michael E. Carpenter, Atty. Gen., Francis E. Ackerman (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

The class plaintiffs, all recipients of Aid to Families with Dependent Children (AFDC), appeal from a judgment entered in the Superior Court (Kennebec County, *Brennan, J.*) barring them from recovering retroactively "pass-through" payments wrongfully withheld by the Department of Human Services (DHS). On appeal, the plaintiffs contend that the DHS's refusal to make those payments constitutes an unconstitutional taking in violation of both the United States and Maine Constitutions. We affirm the judgment of the Superior Court.

Factual and Procedural Background

This dispute results from the United States District Court's decision in *Wilcox v. Ives*, 676 F.Supp. 355 (D.Me.1987), *aff'd*, 864 F.2d 915 (1st Cir.1988), that centered on the "pass-through" payment provisions

set forth in the complex statutory scheme governing AFDC. AFDC is a cooperative federal-state program that provides monthly welfare benefits to families whose income falls below an established level of need. Pursuant to that scheme, and as a condition of receiving AFDC benefits, the aid recipient must assign to the State any rights to child support that the recipient has against the absent parent. 42 U.S.C.A. § 602(a)(26)(A) (1991); *Wilcox*, 864 F.2d at 916. "The support rights assigned to the State under section 602(a)(26) of this Title ... shall constitute an obligation owed to such State by the individual responsible for providing such support." 42 U.S.C.A. § 656(a)(1) (1991).

The subsequent distribution of child support payments assigned to and collected by the State is governed by 42 U.S.C.A. § 657(b). At the time of the *Wilcox* decision, section 657(b) provided that a certain portion of monthly child support payments received by the State from absent parents would be "passed through" to the AFDC recipient without affecting the recipient's eligibility for assistance.[1] Specifically,

> The first fifty dollars of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month.

42 U.S.C.A. § 657(a)(1) (1982 Ed.)

The controversy in *Wilcox* centered on the interplay between section 657(b)(1) and a regulation promulgated by the United States Department of Health and Human Services that, in effect, provided that when more than one month of child support arrearages were collected in a given month, only one $50 pass-through was required to be made to the AFDC recipient. 45 C.F.R. § 302.51; *Wilcox*, 864 F.2d at 916–17. The situation contemplated by the regulation arose when no child support payment was received by the State in one month and a multiple payment was then received in a later month. The State's position in *Wilcox* was that the AFDC recipient should only receive a single $50 pass-through: no pass-through for the month in which no payment was received, and only one $50 pass-through for the month in which multiple payments were received. The AFDC recipients argued that families were entitled to multiple $50 pass-throughs for the month in which the multiple payments were received by the State: one $50 pass-through for each month of child support received. *Wilcox*, 864 F.2d at 916.

Both the United States District Court and the United States Court of Appeals for the First Circuit agreed with the AFDC recipients, struck down the regulation, and ordered the State, in the future, to make pass-through payments with respect to each month for which child support was collected, even when received in arrears. The United States District Court refused, however, to order retroactive pass-through payments for child support received prior to December 29, 1987, the date of the *Wilcox* decision. The court noted:

> [t]he eleventh amendment bars the Court from awarding retroactive welfare benefits to Plaintiffs where the State does not consent to suit. *Edelman v. Jordan*, 415 U.S. 651, 664–65, 94 S.Ct. 1347, 1356–57, 39 L.Ed.2d 662 (1974), and "[t]he Maine Legislature has not enacted any law manifesting consent that the state be subject to suit for retroactive AFDC benefits."

*Wilcox*, 676 F.Supp. at 361 (quoting *Thiboutot v. State*, 405 A.2d 230, 233 (Me. 1979), *aff'd*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)).

While the United States District Court did not order retroactive pass-through payments, it did order the State to send a notice to members of the plaintiff class advising them of the court's decision and "of the existence of administrative procedures already available under state law by which they may receive a determination of

---

1. In 1988, Congress responded to the *Wilcox* decision by amending the statute. Under the amendment, the $50 pass-through will apply to a monthly child support payment only if the absent parent makes it in the month when it is due. *See* 42 U.S.C.A. § 657(b)(1), as amended by P.L. No. 100–485, § 102; *Wilcox*, 864 F.2d at 926 (Breyer, J., concurring).

eligibility for past benefits." *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 347–48, 99 S.Ct. 1139, 1148–49, 59 L.Ed.2d 358 (1979)).

Accordingly, after receiving the aforementioned notice, the plaintiffs [2] opted to seek recovery of retroactive pass-through benefits through state administrative channels. One plaintiff, Janice Farley, was denied her claim after a hearing. The other plaintiffs who responded to the *Wilcox* notice received a written determination that they were not entitled to hearings because their claims were for retroactive payments.[3]

After their claims were denied, the plaintiffs appealed to the Superior Court pursuant to M.R.Civ.P. 80C. A hearing was held, and the Superior Court remanded the matter to the DHS with an order directing the DHS to conduct hearings on the plaintiffs' requests for AFDC pass-through benefits. Although the hearings were never held, the parties have agreed as to the amounts due to each class member in the event that they are entitled to retroactive relief. After reconsidering the matter, the court rejected the plaintiffs' argument that the denial of retroactive AFDC pass-through benefits constituted an unconstitutional taking and concluded that "[t]he plaintiff class is barred by the doctrine of sovereign immunity from retroactively re-

covering 'pass through' payments withheld by the Department of Human Services prior to December 29, 1987." This timely appeal followed.

## I.

### Sovereign Immunity

■■■ The defense of sovereign immunity will not insulate the State from liability if it is found to have committed an unconstitutional taking in violation of either the United States or Maine Constitutions.[4] *See Foss v. Maine Turnpike Authority*, 309 A.2d 339, 342 (Me.1973). "In order for there to be a taking, however, there must be a physical invasion of private property or a substantial impairment of its use and enjoyment." *Wellman v. Department of Human Services*, 574 A.2d 879, 885 (Me. 1990). No taking has occurred, however, because the plaintiffs in the present case have no property rights in the pass-through payments at issue.

■■ The statutory purpose of section 657(b)(1) reveals that pass-through distributions are merely additional welfare benefits. Section 657(b)(1) was enacted in response to another amendment to the AFDC scheme requiring "that a family's eligibility for AFDC benefits must take into account

**2.** The plaintiffs and the class they seek to represent in the present case include all individuals: (a) who are members of the plaintiff class in *Wilcox;* (b) who responded to the class notice required by the United States District Court in *Wilcox;* (c) who sought a determination from the Department of Human Services (DHS) that they were entitled to one or more corrective $50 child support pass through payments as a result of the *Wilcox* decision; and (d) whose requests for an administrative hearing and whose claims were denied by the DHS on the ground that it had no obligation to make corrective, retroactive payments.

The members of the plaintiff class in *Wilcox* included AFDC families where: (i) the absent parent had child support payments deducted from his wages on time, but his employer forwarded the withheld wages to the Maine DHS late; (ii) the absent parent was out of state and made child support payments to an out-of-state agency on time, but that agency forwarded the payments to the Maine DHS late; (iii) the absent parent made child support payments directly to the Maine DHS on time, but the DHS

improperly credited the payments; and (iv) the absent parent made either lump-sum payments or late child support payments directly to the Maine DHS. *Wilcox*, 864 F.2d at 917.

**3.** The relevant portion of the DHS's letter sent to class members stated:

Effective December 29, 1987, the Department of Human Services has changed the manner in which it administers pass-through payments as a result of the United States District Court's decision in the case of *Wilcox v. Ives*, 676 F.Supp. 355 (D.Me.1987). Where your request involves child support payments received *before* December 29, 1987, your claim is denied and you are not entitled to an administrative hearing.

**4.** The fifth amendment to the United States Constitution provides, in relevant part, "nor shall private property be taken for public use, without just compensation." The Maine Constitution, Article 1, section 21, similarly provides that "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."

the income of *all* parents, brothers, and sisters living in the same home." *Wilcox,* 864 F.2d at 919. As a result, the level of benefits to which certain eligible families were previously entitled was reduced. To offset the somewhat harsh impact of the amendment, Congress enacted section 657(b)(1).

> Because the 1984 amendments forced families to include in the filing unit children for whom support payments were being received, the practical effect was that many families' total income was reduced. The burden of the change was mitigated somewhat by a separate amendment providing that the first $50 of child support collected by the State must be remitted to the family and not counted as income for the purpose of determining its benefit level.

*Bowen v. Gilliard,* 483 U.S. 587, 594, 107 S.Ct. 3008, 3013, 97 L.Ed.2d 485 (1987) (citations & footnotes omitted). *See also Wilcox,* 864 F.2d at 920 (purpose of section 657(b)(1) "was to provide eligible families with additional support") (quoting *Beasley v. Harris,* 671 F.Supp. 911, 921 (D.Conn. 1987)). We therefore conclude, in light of the underlying purpose of section 657(b)(1), that pass-through payments are a form of AFDC benefits.

Under current Maine law, AFDC recipients do not have property rights in welfare aid. In *Thiboutot v. State,* 405 A.2d 230 (Me.1979), *aff'd,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), we held:

> Despite occasional suggestions that the right to welfare aid should be regarded as a property right, as distinguished from a mere gratuity, ... not all the rights normally associated with ownership of property are available to recipients under the welfare laws and regulations.... In view of the qualified nature of welfare rights, cases denying the defense of state immunity where plaintiff's property has been taken by the state without just compensation cannot be relied on as precedents controlling the disposition of a class claim for retrospective welfare benefits.

*Id.* at 234 (citations omitted).

■ Since, as discussed in *Thiboutot,* the present plaintiffs held no constitutionally protected property rights in the improperly withheld pass-through funds, their takings claims must fail. "The concept of a taking does not apply to an overpayment of money to the state by a citizen, whether in the form of a welfare reimbursement[,] tax payment, or a fine under a statute later declared unconstitutional." *Wellman,* 574 A.2d at 885. "It would be quite strange indeed if, by virtue of an offer to *provide* benefits to needy families through the entirely voluntary AFDC program, Congress or the States were deemed to have *taken* some of those very family members' property." *Bowen,* 483 U.S. at 605, 107 S.Ct. at 3019 (emphasis in original).

As a result of the plaintiffs' inability to successfully assert a takings claim, the State is therefore insulated from any obligation to remit pass-through payments. "In the absence of the State's waiver of its sovereign immunity, that immunity likewise bars retroactive recovery of AFDC support reimbursements by the plaintiff class in this case." *Wellman,* 574 A.2d at 884 (footnote omitted). The doctrine of sovereign immunity under Maine law was concisely stated in the recent case of *Liberty Mutual Insurance Co. v. Bureau of Labor Standards,* 614 A.2d 1311 (Me.1992). In *Liberty Mutual,* a certain workers' compensation carrier sought the refund of safety education and training fund assessments paid to the Bureau of Labor Standards. The Bureau asserted sovereign immunity as a defense. We noted:

> We have never held that sovereign immunity is confined to actions seeking damages. *In Cushing v. Cohen,* 420 A.2d [919, 922 (Me.1980) ], we found the doctrine applicable to a declaratory judgment action. In *Thiboutot v. State,* 405 A.2d 230 (Me.1979), *aff'd* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), we concluded that sovereign immunity precluded judgment against the state for retroactive welfare benefit underpayments to other members of the plaintiff's class. *Id.* at 237. Most recently, in *Wellman v. Dep't of Human Services,* we again held that sovereign immunity

barred retroactive recovery of payments made to the state.

Sovereign immunity bars Liberty's claim because the state has not waived its immunity by legislative enactment, and Liberty seeks to have the State of Maine adjudicated liable to refund money previously paid to it.

*Id.* at 1312.

## II.

### Due Process

■ The plaintiffs' due process argument must also fail. Specifically, they assert that the DHS's failure to provide a hearing with meaningful relief, i.e., release of pass-through funds, violates their due process rights. Because the plaintiffs, as previously discussed, have no constitutionally protected property rights in the pass-through funds at issue here, we disagree.

[I]n the absence of waiver by the state of its sovereign immunity, the state may constitutionally interpose that immunity as a bar to a class action brought in a state court under 42 U.S.C. § 1983 to recover the amount of past AFDC underpayments, at least where there is no allegation or evidence that the underpayments were made in bad faith for a racially discriminatory or other constitutionally impermissible purpose.

*Thiboutot*, 405 A.2d at 237.

The entry is:

Judgment affirmed.

All concurring.