Joy KENYON, et al., Plaintiffs,

v.

Dawn SULLIVAN, individually, and in her capacity as Director of the Rhode Island Department of Human Services, Defendant and Third Party Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of the United States Department of Human Services, Third Party Defendant.

Civ. A. No. 89–0553P.

United States District Court, D. Rhode Island.

April 10, 1991.

strained to following the reasoning of the recent *Apex* case.

Gretchen M. Bath, R.I. Legal Services, Inc., John Dineen, Providence, R.I., for plaintiffs.

Terence J. Tierney, Sp. Asst. Atty. Gen., Providence, R.I., for R.I.

Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., Joyce Elise McCourt, Asst. Regional Counsel, Boston, Mass., for U.S.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Plaintiffs are a class, certified by order of January 24, 1990, consisting of:

All past, present and future [Aid to Families with Dependent Children ("AFDC") ] recipients whose right to receive child support has been assigned to the Rhode Island Department of Human Services and (a) on whose behalf child support has been or will be paid to DHS or to its counterpart in another state since October 1, 1984 and (b) who have not received the $50 payments they should have received pursuant to federal law.

On October 4, 1989, plaintiffs filed this action against Anthony Barile, then Director of the Rhode Island Department of Health and Human Services ("DHS") (Dawn Sullivan, the current director, has since been substituted as defendant under Fed.R.Civ.P. 25), challenging the state's method of distributing "pass-through" payments from child support received by the state on behalf of the plaintiffs.

Plaintiffs bring this action under 42 U.S.C. § 1983, asserting four basic claims: (1) that since October 1984 DHS has failed to properly pass through the first $50 of child support collected, in violation of plaintiffs' rights under 42 U.S.C. §§ 602(a)(24) and 657(b)(1); (2) that DHS' failure to pass through the first $50, without notice of the amount of support collected and the determination that there would be no pass-through, and the failure to provide an opportunity for a hearing on the determination, deprives plaintiffs of property without due process of law in violation of the Fifth and Fourteenth Amendments; (3) that defendant's failure to make pass-through payments deprives the plaintiffs of property in violation of their substantive due process rights under the Fifth and Fourteenth Amendments; and (4) that defendant's pre-January 1989 policy and practice of making pass-through payments only where the support is both paid and received by DHS in the month when due, yet withholding pass-through payments from recipients where DHS failed to receive support in a month when due, whether or not the absent parent made a timely payment, treats similarly situated groups of AFDC recipients differently without a rational basis and thus violates plaintiffs' rights under the equal protection clause of the Fourteenth Amendment. Plaintiffs seek declaratory and injunctive relief.

DHS filed a third party complaint against Louis Sullivan, Secretary of the United States Department of Health and Human Services ("HHS"), seeking to bind the federal government to any decision of this Court due to the joint responsibilities of the state and federal agencies in carrying out the AFDC program.

Plaintiffs first filed a motion on April 20, 1990 seeking summary judgment only on their pre–1989 statutory claims. Later, on October 11, 1990, plaintiffs filed a subsequent motion for summary judgment which incorporated their earlier motion for partial summary judgment and also sought summary judgment on their statutory claims for the period after January 1989 and on all constitutional claims; this most recent motion thus seeks final judgment on all claims brought by plaintiffs. Also pending is third-party defendant's motion to dismiss the third-party complaint, which I deny.

It is well-settled that a motion for summary judgment under Fed.R.Civ.P. 56 will be granted only if a court finds that there is "no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[S]ubstantive law will identify which facts are material . . . . [and] summary judgment will not lie if the dispute . . . is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must construe all factual inferences in the nonmoving party's favor. *Voccio v. General Signal Corp.*, 732 F.Supp. 292, 294 (D.R.I. 1990). As set out below, I find that the material facts are not in dispute and that plaintiffs have demonstrated that they are entitled to judgment as a matter of law; summary judgment is, therefore, granted in their favor.

## I. Statutory and Factual Background

### A. *Federal Statutory Scheme*

Rhode Island participates in AFDC, a federal spending program to aid low-income families authorized by Subchapter IV–A of the Social Security Act, 42 U.S.C. §§ 601–15. The federal government provides matching funds equal to 50% of a state's expenditures carried out under a plan approved by the Social Security Administration. 42 U.S.C. §§ 1301(a)(8), 1396d(b).

As a prerequisite to receiving AFDC benefits, a parent is required to assign to the state his or her right to child support payments. 42 U.S.C. § 602(a)(26) (1990). The Child Support Enforcement Program, Title IV–D of the Social Security Act, sets out the method of distributing the support payments collected by the state. *Id.* § 657. The Deficit Reduction Act of 1984 ("DEFRA"), effective October 1, 1984, allowed the first $50 of support collected to be passed through to the AFDC recipient. Until January 1, 1989, when it was amended by the Family Support Act of 1988 (Pub.L. 100–485, § 102), section 657(b)(1) provided that:

> The first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month. *Id.* § 657(b)(1) (1982 Supp. IV), *amended by* 42 U.S.C. § 657(b)(1) (1990).

Section 602(a)(8)(A)(vi) required the agency to disregard the first $50 when determining the families' eligibility for AFDC benefits. *Id.* § 602(a)(8)(A)(vi) (1982 Supp. IV), *amended by* 42 U.S.C. § 602(a)(8)(A)(vi) (1990). Pursuant to the statute, the Secretary of HHS promulgated 45 C.F.R. § 302.51(b)(1), interpreting section 657(b)(1) as allowing only one $50 payment per month, and then only if the support payment was received by the recipient's state in the month when due.[1]

On October 13, 1988, the President signed into law the Family Support Act of

---

1. Section 302.51(b)(1), which has not been repealed or amended, states:

Of any amount that is collected in a month which represents payment on the required support obligation for that month, the first $50 of such amount shall be paid to the family. . . . If the amount collected includes payment on the required support obligation for a

1988, effective January 1, 1989, amending 42 U.S.C. §§ 602(a)(8)(A)(vi) and 657(b)(1). As amended, section 657(b)(1) provides:

> [O]f such amounts as are collected periodically which represent monthly support payments, the first $50 of any payments for a month received in that month, *and the first $50 of payments for each prior month received in that month which were made by the absent parent in the month when due*, shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month. *Id.* § 657(b)(1) (1990) (emphasis added).[2]

The Secretary of HHS modified 45 C.F.R. § 302.51(a), effective June 9, 1988, to state that "the date of collection shall be the date on which that payment is received by the IV–D agency or the legal entity of any State or political subdivision actually making the collection, whichever is earliest." *Id.* § 302.51(a) (1990). This amendment means that in cases of interstate collection, the support payment shall be deemed "made" when received by the state responsible for collecting payment, not, as was the case previously, when received by the state in which the recipient resided. Despite the language in the Family Support Act stressing the date payment was "made," this has been the only change in the federal regulations. In the situation of support paid through wage withholding, however, HHS has issued an Action Transmittal (OCSE–AT–88–17) dated November 18, 1988, advising states that while child support in the past had been deemed paid

as of the date of receipt by the state agency, the Office of Child Support Enforcement would require states, effective January 1, 1989, to identify the date of wage withholding and deem child support payments to have been made as of that date.

### B. State Policies and Practices

Rhode Island's IV–D Program is administered by the Bureau of Family Support within the DHS. DHS has the responsibility of determining whether a pass-through payment is due to families receiving AFDC benefits and for distributing such payment to AFDC families.

For the period of October 1, 1984, through December 31, 1988, plaintiffs allege and DHS has admitted that "it was DHS' practice and policy not to release a pass-through payment for any month in which DHS failed to receive child support from the absent parent even if that money was received in a subsequent month." This policy and practice applied regardless of whether the absent parent made payment when due.

Since the Family Support Act of 1988 became effective on January 1, 1989, DHS has not amended its regulations to provide for distribution of pass-through payments for months in which DHS receives no support. As of at least September 20, 1990, DHS has issued no written instructions, policies, memoranda or other written material to its employees or agents specifying the circumstances under which a pass-through payment will be released for a month in which DHS received no child support.[3] DHS has no system for distinguish-

---

previous month or months, that family shall only receive the first $50 of the amount which represents the required support obligation for the month in which the support was collected.... No payment shall be made to a family under this paragraph for a month in which there is no child support collected. 45 C.F.R. § 302.51(b)(1) (1990).

**2.** As amended, section 602(a)(8)(A)(vi) states that the state agency:

shall disregard the first $50 of any child support payments for such month received in that month, and the first $50 of child support payments for each prior month received in that month if such payments were made by

the absent parent in the month when due, with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children. *Id.* § 602(a)(8)(A)(vi) (1990).

**3.** This Court has, on the date of this order, granted plaintiffs' motion to strike from the record two memos on the ground that defendant failed to provide them to plaintiffs despite discovery requests and a motion to compel. These documents would not, however, have affected the outcome of the summary judgment motion. The first document stricken was a Bureau of Family Support inter-office memo, dated September 26, 1989, on responsibilities under

ing the date payment is "made" by the parent from the date it is received by DHS. Although it has a computerized system for recording child support collections, that system records only the date child support is *received* and contains no space for entry of other dates, including the date payments are *made*. DHS has assigned no one the job of determining the date payment is made and neither monitors nor records the date of wage-withholding or the postmark dates.

It has always been DHS policy to disregard the date of postmark when determining whether a pass-through payment is due. DHS has instead always relied upon the date of receipt when support payments are made by mail.

Although since January 1, 1989, DHS will use the date of wage withholding in determining whether a pass-through payment should be made if the employer supplies the date, DHS uses the date of receipt if the employer does not supply the date of withholding. Furthermore, DHS neither requests nor requires employers to report the date of withholding and makes no effort to determine the withholding date when it is not supplied. DHS has issued no written instructions to employers telling them to report the date support was withheld.

As with wage withholding, since January 1, 1989, DHS will use the date payment is received by an out-of-state agency in interstate cases only if the out-of-state agency reports it to DHS; otherwise DHS uses the date the payment was received by DHS. DHS neither requests nor requires out-of-

state agencies to list dates they receive child support and DHS forms sent to out-of-state agencies contain no such instruction.

From October 1, 1984 through the present, it has been DHS' policy and practice not to provide AFDC families with written notice and an opportunity to be heard on the issue of DHS' determination that the family is not due a pass-through for a particular month. The only notice DHS provides AFDC families is a form sent annually which lists the yearly total of support collected and the yearly total of pass-through payments made, but which does not specify dates of receipt or dates of payment. The notice contains no other information or explanation and is not sent at all if DHS has not collected any support in that time.

## II. Violation of Pre–Amendment Law

### A. *Liability*

■ Under *Wilcox v. Ives*, 864 F.2d 915 (1st Cir.1988), it is clear that DHS' policies and practices prior to January 1, 1989 violated section 657(b)(1).[4] *Wilcox* held, in a case involving the same policies and practices at issue here, that section 657(b)(1) "requires that the state make multiple pass-throughs to AFDC recipients when the state receives more than one child support payment in a given month" and that these multiple pass-throughs be disregarded when the state determines the families' AFDC eligibility. *Id.* at 926. The later passage of the Family Support Act does not undermine the *Wilcox* holding because,

the Family Support Act. The second memo is dated December 12, 1990, and demonstrates that DHS sometimes does allow more than one pass-through in a month. The inter-office memo is so brief and vague that it does not contradict the assertion that DHS has not promulgated policies to implement the full import of the Family Support Act. More importantly, neither memo contradicts the fact that DHS relies on the date of receipt unless an employer or out-of-state agency informs it of the date payment was "made."

**4.** The parties are now in agreement that *Wilcox* is controlling. Third party defendant HHS, in a brief joined by DHS, originally argued the mer-

its of *Wilcox*, pressing this Court to find the pre–1989 policies and practices in compliance with the federal statute. After plaintiff argued that urging this Court to disregard First Circuit precedent may run afoul of Rule 11, HHS responded that it accepted that the holding of *Wilcox* determined the rights of the parties as to the pre–1989 statutory claims. DHS never joined in HHS' later brief, but because it did not disavow it, I will assume that DHS accepts the force of the *Wilcox* decision. DHS in a later brief notes that the more recent opinion in *Vanscoter v. Sullivan*, 920 F.2d 1441, 1445 (9th Cir.1990) disagrees with *Wilcox*. Because this Court sits in the First, not the Ninth, Circuit, I remain bound by the First Circuit decision.

as indicated in a letter submitted by plaintiffs, counsel for HHS provided a copy of the new law and its legislative history to the First Circuit Court of Appeals prior to its *Wilcox* decision.

Defendants argue that *Wilcox* has no bearing on the post-amendment claims, that the Family Support Act renders those claims moot, and that because the prospective claims are moot, the Eleventh Amendment bars any relief for violations under the old law. Plaintiffs request that this Court rule only on liability now and address relief in a later proceeding. However, because the Eleventh Amendment issue affects this Court's jurisdiction, *see Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974), I feel I must address it at this stage.

### B. *Eleventh Amendment*

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." In spite of the clear language of the amendment, it has been interpreted to also bar suits against a state by one of its own citizens. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). *Ex parte Young,* however, allows a federal court to enjoin state officials to comply with federal law. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

The Supreme Court later held that a federal court's order enjoining state officials to make retroactive payment of statutory benefits wrongfully withheld was barred by the Eleventh Amendment. *Edelman,* 415 U.S. at 678, 94 S.Ct. at 1363 (1974). The Supreme Court ruled that such an action violated the Eleventh Amendment because it sought retroactive monetary payments that would be paid from public funds in the state treasury. *Id.* at 666–67, 94 S.Ct. at 1357–58. Prospective relief that has an impact on the state treasury is, however, permissible. *Id.; Milliken v.*

*Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977).

In *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), a later case in the *Edelman* litigation, the Supreme Court upheld the district court's use of "notice relief." *Id.* at 349, 99 S.Ct. at 1149. The Court of Appeals for the Seventh Circuit had held that a state agency could be ordered to send notice to the class members notifying them of the outcome of the federal suit and explaining the state administrative procedures through which they could obtain a determination of their eligibility for past welfare benefits. *Id.* at 336, 99 S.Ct. at 1142. The Supreme Court approved such relief because the district court had not ordered the payment of any past benefits and the notice was "ancillary to the prospective relief already ordered by the court." *Id.* at 349, 99 S.Ct. at 1149. *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), made it clear that in the absence of prospective relief, notice and declaratory relief based solely on past violations of federal law are barred by the Eleventh Amendment. *Id.* at 71, 106 S.Ct. at 427.

Plaintiffs seek to get around the possible Eleventh Amendment problems in several ways. First, plaintiffs argue that the money involved is not state money, rather it is money that passes from the absent parent to the custodial parent through the state. This argument fails because of the fact that plaintiffs must assign their rights to child support to the state in order to receive AFDC benefits. 42 U.S.C. § 602(a)(26); *see Mosley v. Hairston,* 920 F.2d 409, 417 (6th Cir.1990). When child support payments are received from the absent parent by the state they become state funds; pass-through payments are paid to the AFDC recipients out the state treasury. *Mosley,* 920 F.2d at 417.

Plaintiffs cite to *Beasley v. Harris,* 671 F.Supp. 911 (D.Conn.1987), for the proposition that,

[t]o cloak such payments with immunity, however, ignores the fact that but for the illegal retention of the money by the

state it would have been properly forwarded to the AFDC family as required under § 657(b)(1).... The state may not violate the law by converting money which lawfully belonged to one of its citizens and then seek to insulate its actions under the immunity doctrine. *Id.* at 921–22.

This Court, however, agrees with the Third Circuit:

The argument has the appeal of logic and consistency with the justifications sometimes advanced for the *Hans v. Louisiana* interpretation of the Eleventh Amendment. Neither logic nor consistency has been readily discernable, however, in the arcane jurisprudence of that constitutional provision, and we are unable to predict with any degree of confidence that a new day is dawning. *Edelman v. Jordan,* as we read it, prevents a federal court from requiring state officers to disgorge from the state treasury even unlawfully converted property, at least so long as the state pays for the disgorgement. *Bennett v. White,* 865 F.2d 1395, 1408 (3d Cir.), *cert. denied,* [492 U.S. 920] 109 S.Ct. 3247 [106 L.Ed.2d 593] (1989).

This Court is not persuaded that the pass-through payments do not involve the state treasury; the Eleventh Amendment is thus implicated.[5]

█ Plaintiffs' second argument regarding the Eleventh Amendment is that even if it prevents retroactive relief against the state defendant in her official capacity it does not affect retroactive relief that may be ordered against her in her individual capacity. The facts in the complaint, however, do not suggest individual liability, particularly as defendant Dawn Sullivan did not take office until January 1, 1991, and was substituted as the defendant in place of Anthony Barile pursuant to Fed.R. Civ.P. 25. Ms. Sullivan, therefore, was not in office for most of the past class period and Mr. Barile, who was in office, is no longer a party to this suit. The argument for individual liability does not advance plaintiffs' cause in any meaningful way.

█ Finally, plaintiffs contend that the Eleventh Amendment is not at issue because Rhode Island has waived its sovereign immunity in federal courts through R.I.G.L. § 9–31–1. While it is true that the waiver contained in § 9–31–1 has been construed to apply to the federal courts and Eleventh Amendment immunity, *see Marrapese v. Rhode Island,* 500 F.Supp. 1207, 1223 (D.R.I.1980); *Laird v. Chrysler Corp.,* 460 A.2d 425, 429 (R.I.1983), the statute states only that the state shall "be liable in all actions of tort in the same manner as a private individual or corporation." R.I.G.L. § 9–31–1. The state has not waived its immunity for traditional governmental activities. *See R.I. Affiliate of the ACLU v. R.I. Lottery,* 553 F.Supp. 752, 765–66, n. 9 (D.R.I.1982). Because the provision of welfare benefits and the related pass-throughs are part of traditional governmental responsibilities, Rhode Island has retained its sovereign immunity and Eleventh Amendment protection in this case.

█ This Court cannot, therefore, order the payment of retroactive benefits. Plaintiffs, however, have requested declaratory and notice relief. Such relief as that provided in *Quern* is permissible under *Green* as long as it is tied to prospective relief. As discussed *infra,* this Court finds present violations of law and orders pro-

---

**5.** The court in *Bennett* noted that half of the AFDC funding is provided by the federal government. *Bennett,* 865 F.2d at 1408. The court thus held that the district court should have ordered retroactive relief to the extent that the state would be reimbursed by the federal government. *Id.* This Court will not order similar relief. The First Circuit has held that, although retroactive relief is allowed when the state will be fully reimbursed by the federal government, when state and federal funds are intermingled the Eleventh Amendment bars retroactive relief. *Fernandez v. Chardon,* 681 F.2d 42, 59–60 (1st Cir.1982), *aff'd sub nom., Chardon v. Fumero Soto,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983). In addition, this Court cannot understand how the relief allowed in *Bennett* would not implicate state funds. Under the AFDC program the federal government reimburses state agencies for half of their costs. Thus, retroactive payments would be derived first from state funds and the federal government would then contribute to the state only half of what it had expended.

spective relief; plaintiffs are therefore entitled to a declaratory judgment indicating that the DHS has committed past violations of its statutory obligations [6] and notice relief of the type provided in *Quern. See Beasley v. Ginsberg,* 1989 WL 202144 at 12, 1989 U.S. Dist. Lexis 16682 at 40, D.Conn., Oct. 3, 1989 (in AFDC pass-through case with class period beginning October 1984, notice relief relating to past violations granted because tied to prospective relief for violations of current federal law). Plaintiffs shall submit a proposal for the form of the notice within 20 days of the date of this order.

## III. Violation of Current Law

### A. *Wage Withholding*

■ Current federal law states that pass-through payments shall include "the first $50 of payments for each prior month received in that month which were *made* by the absent parent in the month when due." 42 U.S.C. § 657(b)(1) (1990) (emphasis added). The statute thus "on its face distinguishes the date a support payment is 'received' from the date on which it is 'made.'" *Vanscoter,* 920 F.2d at 1449. Although there are no federal regulations regarding payments made through wage withholding, the federal Secretary has issued an Action Transmittal which states in part that, "if an employer withholds child support in the month the support was due and subsequently pays that support to the IV–D agency in a later month, the $50 disregard must be credited for the period during which the withholding actually occurred." OCSE–AT–88–17 (Nov. 18, 1988). Without deciding whether the Action Transmittal has the force of law,[7] I find that it is the Secretary's "authoritative administrative interpretation of the governing statute," *Vanscoter,* 920 F.2d at 1449, and that DHS must use the date of withholding.

DHS agrees that the proper date for computing pass-through payments is the date of withholding, not the date of receipt by DHS. As in *Beasley,* "[t]he point of contention between the parties is the extent of defendants' obligation to ascertain the date of wage withholding." *Beasley,* 1989 WL 202144 at 3, 1989 U.S. Dist. Lexis 16682 at 11. DHS admits that it uses the date of withholding only if it is supplied by the employer; otherwise it uses the date of receipt. DHS' forms to employers do not request the date of withholding; it has no method for determining the date of withholding; it has no enforcement mechanism for dealing with employers who do not supply the date; and its computerized system does not even provide space to indicate the date of withholding. These practices fall far short of DHS' statutory obligations.

The statute entitles AFDC recipients to a $50 pass-through when payments are made in the month when due. When payments are collected through wage withholding, the state is obliged to make a pass-through if the payment was withheld in the month when due, not just in cases in which the withholding date is supplied by the employer. *Id.* at 4, 1989 U.S. Dist. Lexis 16682 at 12. "As [section 657(b)(1)] obliges agency action if the facts entitle the recipient to the benefit of the statute, impliedly it creates an affirmative obligation on the IV–D agency to determine the date of withholding." *Id.* at 4, 1989 U.S. Dist. Lexis 16682 at 13. This Court finds, therefore, that to the extent that DHS relies upon the date of receipt and fails to live up to its obligation to determine the date of withholding, its policies and practices violate plaintiffs' rights under 42 U.S.C. § 657(b)(1).

### B. *Interstate Colllection*

■ Although there are no federal regulations on wage withholding cases, the federal Secretary did amend 45 C.F.R. § 302.51(a) to provide that in cases involv-

---

**6.** Because I find for plaintiffs on their statutory claim, I do not reach their constitutional claims relating to pre–1989 practices.

**7.** The parties argue over the impact of an Action Transmittal. I find, however, that DHS is not in compliance with the statute or the Action Transmittal, see *infra.* Therefore, I need not decide the effect of the Action Transmittal.

ing interstate collection of support, payment is "made" when it is received by the collecting state rather than the AFDC recipient's state. In *Vanscoter*, the Ninth Circuit held that the regulation settled any dispute on that issue and that injunction relief was, therefore, probably inappropriate. *Vanscoter*, 920 F.2d at 1448. This case differs from *Vanscoter*, however, in that DHS is not complying with the regulation. As in the wage withholding cases, DHS uses its date of receipt unless the date payment was made is supplied and has no method for determining or recording the date payment was made. I thus find that in interstate cases DHS is also violating plaintiffs' statutory rights by failing to live up to its affirmative duty to obtain the date payment was received by the collecting agency.

## C. *Payments Made by Mail*

█ Plaintiffs contend that in order to comply with the statute's directive to credit payments as of the date they are "made," in cases involving payments made by mail DHS must use the postmark date, not the date of receipt. Other courts have required state agencies to adopt a postmark rule. *See Lawyer v. Valdez*, No. 88–0620–JC, slip op. at 6, 15 (D.N.M., August 17, 1990); *Berg v. Gardebring*, 708 F.Supp. 238, 240 (D.Minn.1989); *Beasley*, 1989 WL 202144 at 5, 1989 U.S. Dist. Lexis 16682 at 15–16; *but see Vanscoter*, 920 F.2d at 1449–50 (overturning district court's adoption of postmark rule).

As is clear from the discussion of wage withholding and interstate collection, section 657(b)(1) indicates that agencies should not use the date of receipt when calculating pass-through payments. "The Act is not framed in terms of a payment as 'received' or 'collected' in the month when due, but in terms of a payment when made which suggests an irrevocable transfer of the funds into the possession or control of the agency obliged to make the pass-through." *Beasley*, 1989 WL 202144 at 5, 1989 U.S. Dist.

Lexis 16682 at 15. Once an absent parent posts the payment he can do no more to complete the act of "making" a payment. *Id.* 1989 WL 202144 at 5, 1989 U.S. Dist. Lexis at 16. It would not be fair to deprive the AFDC family of a $50 pass-through when support was mailed in the month when due but, due to postal delays, the payment is not received by DHS until the following month. *Id.* at 5, 1989 U.S. Dist. Lexis at 15. A date of postmark rule is also in keeping with the common law rule that "payment is made when a letter containing the remittance properly addressed and with postage prepaid is deposited in the mail." *Vanscoter*, 920 F.2d at 1449 (quoting 60 Am.Jur.2d *Payment* § 11 (1972)).

The federal Secretary has neither promulgated regulations nor distributed an Action Transmittal or other formal notice regarding the date to credit payments made by mail.[8] It was on this basis that the Ninth Circuit ruled that state agencies may use the date of receipt for mailed payments. *Vanscoter*, 920 F.2d at 1449–50 (holding that although postmark rule was reasonable under the statute it was not required absent regulations). Unlike the Ninth Circuit, however, I believe that the plain language of the statute dictates use of a postmark rule when payment is accepted by mail. *See Beasley*, 1989 WL 202144 at 13 n. 6, 1989 U.S. Dist. Lexis 16682 at 16 n. 6. If the statute mandates the date payment is "made" rather than the date it is "received" be used in other contexts, it is only rational to interpret the statute to reject the use of the date of receipt in payments involving the mails. I, therefore, hold that, although section 657(b)(1) does not mandate that DHS accept payment through the mails, if payment by mail is accepted, section 657(b)(1) requires that DHS credit the payment as of the date it is postmarked. DHS' present practice violates the statute; DHS must formulate policies and practices to implement a date of

---

**8.** In his brief, the Secretary alludes to the possible problems with a date of postmark rule, such as establishing an audit trail. He states that

unless and until federal regulations to the contrary are enacted, states are free to use the date of receipt for payments made by mail.

postmark rule.[9]

## IV. Notice

 Plaintiffs argue that these statutory violations deprive plaintiffs of property without due process of law in violation of their Fifth and Fourteenth Amendment rights because they are not provided with adequate notice and an opportunity to be heard. DHS contends that the yearly notice plaintiffs receive is adequate and that a hearing is available under R.I.G.L. § 42–31–1, *et seq.* The yearly notice informs plaintiffs on whose behalf support has actually been collected only of the total amount of support collected and the total amount of pass-through payments made.

Section 657(b)(1) creates a property interest for plaintiffs in the pass-through payments. In accordance with the constitution, plaintiffs cannot be deprived of that property interest without due process of law. *See Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). In order to determine what process is due, this Court must balance three factors:

> [f]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335, 96 S.Ct. at 903.

Plaintiffs' interest in the pass-through payments, while not as great as their interest in their primary AFDC benefits, is significant. An additional $50 a month can be very important to a low-income family. "Due process requires that the recipients be given sufficient notice to permit them to determine whether they are receiving the support to which they are entitled." *Vanscoter v. Bowen*, 706 F.Supp. 1432, 1439

(W.D.Wash.1988), *aff'd in part and rev'd in part, Vanscoter v. Sullivan*, 920 F.2d 1441 (9th Cir.1990). The notice plaintiffs currently receive, which does not include the date child support payments were made or the date pass-through payments were made, in no way apprises plaintiffs of the information necessary for them to determine if DHS has mistakenly deprived them of payments. Plaintiffs require more thorough and frequent notice to enable them to challenge DHS' determinations.

This Court must also weigh the burden on the government of supplying more detailed and frequent notice. I find that, at this time, monthly notice would be too burdensome for DHS, particularly in light of the changes the department must make to comply with my orders relating to other issues. Quarterly notice supplying plaintiffs with information about the date and amounts of child support payments and pass-throughs (information that DHS is now required to monitor) as well as information regarding the method for administratively challenging DHS's determination, would not unduly burden the government. *See Vanscoter*, 920 F.2d at 1450 (upholding district court order of quarterly notice).

DHS' current notice does not comply with constitutional requirements. In the future, DHS must supply adequate, quarterly notice. Plaintiffs shall submit the proposed form of this notice within 20 days of this order.

## CONCLUSION

Plaintiffs' motion for summary is granted. DHS' policies and practices are in violation of federal law and have been since October 1, 1984. In the future, DHS must conform to federal law, as outlined above. Plaintiffs are entitled to declaratory and injunctive relief as well as an order for DHS to supply the class members with notice of this decision and their rights to a possible remedy through state procedures. Plaintiffs shall submit a proposed injunction and the proposed form of notice relief

---

**9.** As with the pre–1989 claims, because I find that plaintiffs' statutory rights have been violat-

ed I do not reach the constitutional claims.

and quarterly notice within 20 days of this order. Third-party defendant's motion to dismiss the third-party complaint is denied and third-party defendant shall be bound by this order. So ORDERED.