738 A.2d 981 (1999)
325 N.J. Super. 258
The BOROUGH OF MERCHANTVILLE, Plaintiff-Appellant,
v.
STATE of New Jersey, DEPARTMENT OF HUMAN SERVICES, DIVISION OF MENTAL HEALTH SERVICES, Defendant-Respondent.
Township of Pennsauken, Plaintiff-Appellant,
v.
State of New Jersey, Department of Human Services, Division of Mental Health Services, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 6, 1999.
Decided October 25, 1999.
*983 Timothy J. Higgins, for plaintiff-appellant, Borough of Merchantville.
Veronica, Meloni & Vecchio, Haddonfield, for plaintiff-appellant Township of Pennsauken (Lawrence M. Vecchio, on the brief).
John J. Farmer, Jr., Attorney General, for defendant-respondent in both cases (Joseph L. Yannotti, Assistant Attorney General, of counsel; Judith A. Nason, on the briefs).
Before Judges KING, CARCHMAN and LEFELT.
*982 The opinion of the court was delivered by
LEFELT, J.S.C. (temporarily assigned).
To address a compelling need for affordable housing for mentally ill homeless individuals, the New Jersey Housing and Mortgage Finance Agency, the University of Medicine and Dentistry of New Jersey and the Division of Mental Health Services, within the Department of Human Services, secured funding to provide scattered-site housing for homeless mentally ill persons in Camden County. The University and the Mortgage Finance Agency called this program "Housing with a Heart." In these appeals, the Borough of Merchantville and the Township of Pennsauken challenge the Department of Human Services' licensing of several community residences that were established pursuant to this program. Because the facts and issues raised by the municipalities are similar, we have consolidated the appeals solely for purposes of this opinion. Merchantville and Pennsauken question whether the Department of Human Services has complied with its regulatory and statutory responsibilities concerning the licensing, location and staffing of these residences. We conclude that the administrative agency has so complied and we affirm the licensing of these facilities.
Community residences for the developmentally disabled, including the mentally ill, are permitted uses in all residential districts of any municipality. N.J.S.A. 40:55D-66.1 and -66.2. Community residences for the mentally ill require a license from the Department of Human Services ("Department") pursuant to appropriate regulations promulgated by the Department's Commissioner. N.J.S.A. 30:11B-4. The Commissioner delegated this licensing authority to the Director of the Division of Mental Health Services ("Division"). N.J.A.C. 10:37A-2.1. To become licensed, a provider agency must demonstrate the intent and capability to operate a community residence in accordance with the controlling regulations. N.J.A.C. 10:37A-1.1 to -9.7.
The goal of the "Housing with a Heart" program was to reduce the number of homeless people with mental health problems living on the streets and in homeless shelters and to improve the community life *984 of homeless mentally ill individuals in Camden County. Under this program, three provider agencies were licensed to operate the four community residences that Merchantville and Pennsauken challenge.
The Steininger Center was licensed to serve five persons at 45 Volan Street in Merchantville. South Jersey Behavioral Health Resources was licensed to serve three persons at 2261 39th Street and four persons at 3621 Camden Avenue in Pennsauken. The University of Medicine and Dentistry of New Jersey was licensed to serve five persons at 7100 Waldorf Street also in Pennsauken. All of these residences are considered group homes because they are single family residences or structures "containing three or more dwelling units, all of which are utilized for the provision of residential care services." N.J.A.C. 10:37A-1.2.
Merchantville and Pennsauken object to the licensing of these facilities in their communities and point to various rules and statutory requirements they claim were violated by the Department. We address each of the objections advanced by both municipalities.
Merchantville claims that the one group home in its community on 45 Volan Street has been improperly staffed and violates N.J.A.C. 10:37A-1.2, which requires that group homes have staff that "reside or are stationed either on-site or in immediate close proximity."
The group home in Merchantville as well as the homes in Pennsauken have been developed to serve persons who require no more than one to four hours of in-home supervision weekly. Only high functioning individuals were selected for these homes. According to the Division, this level of supervision is considered "C" level and means that staff will be on-site a minimum of one hour per week, but typically staff is "on-site" providing services three to four hours per week.
Because N.J.A.C. 10:37A-1.2 permits staff to reside either on-site or be stationed on-site, the rule does not necessarily require that staff be on-site twentyfour hours a day. Instead, the rule must be interpreted in conjunction with the clinical needs of the residents, who also must "live in the most normalized, least restrictive environment possible." N.J.A.C. 10:37A-1.1(d). Because the homes in question contain persons who require no more than four hours of supervision weekly, the staffing at "C" level meets the N.J.A.C. 10:37A-1.2 requirements.
Furthermore, Merchantville's group home also meets the alternative staffing requirement of "immediate close proximity." N.J.A.C. 10:37A-1.2. Merchantville claimed that on-call staff were in another town and could not possibly be considered in "immediate close proximity." However, the Merchantville residence is quite close to the Pennsauken border and on-call staff are available in nearby Collingswood, Cherry Hill and Camden.
Most significantly, the Steininger Center, which runs the Merchantville group home, provides a full range of communitybased acute care mental health services in conjunction with Our Lady of Lourdes Hospital in Camden. The Center operates twenty-four hours a day and serves more than 5,000 clients a year. Staff at the Center have extensive experience in providing comprehensive mental health services. Our Lady of Lourdes Hospital is less than five miles, by several routes, to the Merchantville group home. Accordingly, we cannot fault the Director's finding that staff "are available twenty-four hours a day should a crisis develop ... in the event of an emergency, the residents may call upon the staff who are available to respond immediately."
Merchantville also argued that because the group home residents have a multiplicity of other problems, the facility violates the statutory definition of mental illness set forth in N.J.S.A. 30:11B-2. *985 Consequently, Merchantville contends that the Division erred by placing these persons in group homes for the mentally ill.
In relevant part, a "[c]ommunity residence for the mentally ill" is defined as:
[A]ny community residential facility which provides food, shelter and personal guidance, under such supervision as required, to not more than 15 mentally ill persons who require assistance temporarily or permanently, in order to live independently in the community ... and shall include, but not be limited to, group homes, halfway houses, supervised apartment living arrangements, family care homes and hostels.
[ N.J.S.A. 30:11B-2.]
"Mentally ill" is defined as:
[A]ny psychiatric disorder which has required an individual to receive either inpatient psychiatric care or outpatient psychiatric care on an extended basis.
[N.J.S.A. 30:11B-2.]
Facially, the statute does not limit community residence for the mentally ill solely to persons whose only problem is mental illness. There is no indication that the Legislature intended such limitation.
Furthermore, substantial funding for the group homes in question was provided by Housing and Urban Development ("HUD"). The federal agency made funds available to assist homeless individuals with disabilities. HUD indicated that priority would be given for plans which serve homeless individuals who are seriously ill, have chronic problems with alcohol or drugs or have AIDS. 24 C.F.R. § 582.1. Consistent with HUD regulations, the admission criteria for the Merchantville and Pennsauken group homes were individuals eighteen years of age or older with serious mental illness or persistent problems with alcohol and or drugs with mental illness.
Consequently the Merchantville and Pennsauken group homes contain individuals who are mentally ill including those who were homeless and recovering from substance abuse problems. In addition, persons were selected who were not a danger to themselves or others.
Mentally ill recovering alcohol and drug abusers are protected persons under the federal Fair Housing Act, 42 U.S.C.A. §§ 3601-3631, and cannot be denied placement in community residences. Easter Seal Soc'y of New Jersey, Inc. v. Township of North Bergen, 798 F.Supp. 228, 233 (D.N.J.1992). The Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C.A. §§ 3601-3631, extended the protection of the federal Fair Housing Act to persons with disabilities. Under that law it is unlawful to discriminate by making a dwelling unavailable to a handicapped person. 42 U.S.C.A. § 3604(f)(1). Handicap includes a physical or mental impairment which substantially limits one or more of a person's major life activities, but does not include current drug use. Oxford House, Inc. v. Township of Cherry Hill, 799 F.Supp. 450, 459 (D.N.J.1992).
Recovering alcoholics and other substance abusers, however, are protected under the federal law. Ibid.; Cherry Hill Tp. v. Oxford House, Inc., 263 N.J.Super. 25, 52, 621 A.2d 952 (App.Div.1993). It would, therefore, constitute discrimination to restrict these group homes to those persons who are just mentally ill. See, Association, for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth, 876 F.Supp. 614 (D.N.J.1994).
The Department licensed sixteen community residences in Camden County. Of the sixteen, three were licensed in Pennsauken, one in Merchantville and ten in Camden. The applicable statute provides, "the department shall insure that these residences are available throughout the State, without unnecessary concentration in any area." N.J.S.A. 30:11B-5. Pennsauken claims that because the Department has licensed fourteen residences in 19.96 square miles within Camden County, which is 222.27 miles, there is an unnecessary concentration of community *986 residences in one area: Pennsauken, Merchantville and Camden.
We reject Pennsauken's claim. Historically, there was a lack of adequate housing for homeless, mentally ill individuals in Camden County. The residences in question were developed where they were needed and could practically be located. The University and Mortgage Finance Agency sought homes in good environments within Camden County that could be purchased within the budget allocated for the project. The University primarily considered houses which required extensive renovations. More than 120 properties in seventeen different Camden County communities were screened. The Department wanted to place program participants as close to familiar surroundings as possible in order to motivate them to stay in the program and to insure that the community residences were distributed throughout Camden County and not clustered in one or two locations.
The entire program provides housing for forty-nine persons. The location of forty-nine individuals into an area which houses hundreds of thousands can hardly constitute "unnecessary concentration." Combined, the three homes in Pennsauken house nine persons, with the licenses permitting housing for 12 persons. When compared with Pennsauken's population of more than 4,000 residents, this "intrusion" is insignificant.
Even if we assume that there was a concentration and that the meaning of "area" within N.J.S.A. 30:11B-5 includes only Camden, Merchantville and Pennsauken and not all of Camden County, the objecting municipalities still have not established that the State caused an "unnecessary concentration." The evidence warrants a conclusion that the State's chosen locations were necessary. Certainly, the municipalities have not established the contrary.
In addition, we conclude, contrary to Merchantville's contention, that a contested case hearing under the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -14, was not required to consider the municipalities' objections. No objecting town has a statutory or constitutional right to a hearing to contest the licensing or operation of community residences for the mentally ill within its borders. Township of West Orange v. Whitman, 8 F.Supp.2d 408, 415-17 (D.N.J.1998). In the absence of a constitutional or statutory hearing right, the matter did not require transmittal to the Office of Administrative Law. N.J.S.A. 52:14B-2(b); Normandy Beach Improvement Ass'n v. Commissioner, Dep't. of Envtl. Protection, 193 N.J.Super. 57, 472 A.2d 156 (App.Div.1983), certif. denied, 96 N.J. 305, 475 A.2d 596 (1984).
Finally, it bears noting that the Legislature has explicitly found that individuals suffering from mental illness have:
[A] right to the fuller, more normal life that care in community residences brings, and it is, therefore, the intention of the Legislature through this act, to encourage the development of community residences for the mentally ill[.]

[ N.J.S.A. 30:11B-1.]
The Department's actions in this case have admirably fostered the Legislative intent to develop community residences for the mentally ill. The findings of fact and conclusions of law justifying the licensing of these residences by the Director of the Division of Mental Health Services on behalf of the Department were among the most thorough we have ever seen. Even if we had to apply a more rigorous review standard, we would affirm. There is no question in our minds that the agency's action was not arbitrary, capricious or unreasonable. Brady v. Board of Review, 152 N.J. 197, 210, 704 A.2d 547 (1997). Therefore, the final agency action of the Department of Human Services must be, and shall be affirmed.
Affirmed.