2004 ME 9

**Scott BOUCHARD**

v.

**Amy FROST et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 12, 2003.

Decided: Jan. 13, 2004.

Thomas S. Carey, Esq., Curtis J. Rice, Esq., Carey & Associates, P.A., Rumford, for plaintiff.

G. Steven Rowe, Attorney General, Diane E. Doyen, Asst. Attorney General, Raymond Ritchie, Asst. Attorney General, Augusta, (for Dept. of Human Services), Amy M. Frost, Mexico, for Defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Scott Bouchard appeals from a judgment of the District Court (Rumford, *McElwee, J.*) denying his petition for retroactive nullification of an administrative order that required him to pay child support. Bouchard contends that he is not equitably estopped from receiving retroactive relief and is entitled to reimbursement, by the Department of Human Services, of the child support he paid between 1990 and 2001. He also contends that equity entitles him to restitution from the child's mother, Amy Frost, for the monies she received in the form of child support during that time period. Unpersuaded by Bouchard's contentions, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

[¶ 2] Scott Bouchard and Amy Frost were in a relationship when Frost became pregnant and informed Bouchard that the child was his. Bouchard and Frost did not continue their relationship after the child was born on December 5, 1989. Bouchard did not establish a relationship with the child.

[¶ 3] Frost began receiving public assistance benefits from the Department after the child was born. In order to receive those benefits, Frost was required to participate in a paternity interview with the Department. During that interview, she named Bouchard as the father and affirmatively denied that anyone else could be the child's father. Bouchard acknowledged his paternity on a putative father interview form that the Department provided. He did not request blood testing, although the form allowed for that option.

He also signed an acknowledgment of paternity.

[¶ 4] As a result of Bouchard's acknowledged paternity, the Department issued an administrative support order, requiring Bouchard to pay $1310 in past support, and $47 per week in ongoing support. Bouchard did not appeal that order, although the order indicated that he had the option of doing so. Overall, Bouchard paid the Department $22,695 in child support payments.

[¶ 5] Bouchard married in 1998 and, in 1999, had a child with his current wife. Out of a desire to determine whether his child had a half-sibling, Bouchard filed a complaint to determine parental rights and responsibilities in 2001. Genetic testing determined that he was not the biological father of Frost's child. Bouchard supplemented his pleadings, and filed a motion for relief from order pursuant to M.R. Civ. P. 60(b)(6), a petition to rescind acknowledgment of paternity, a petition for declaratory judgment, and a petition for writ of replevin.

[¶ 6] The District Court issued an order rescinding Bouchard's acknowledgment of paternity, declaring that Bouchard is not the biological father of Frost's child, and holding that Bouchard is not liable for child support after October, 17, 2001.[1] None of the parties challenge this portion of the court's order.

[¶ 7] Additionally, the District Court concluded that Bouchard was estopped from denying paternity from the time he acknowledged paternity to the date the Department acknowledged receiving notice of Bouchard's complaint. The court also found that, although Frost's testimony regarding her knowledge of the paternity of her child's father was suspect,[2] the court was unable to conclude that Bouchard proved, by a preponderance of the evidence, "any element of any cause of action which would entitle plaintiff to retroactive relief." Bouchard then filed this appeal.

## II. DISCUSSION

### A. Sovereign Immunity

[¶ 8] Although the District Court relied on principles of equitable estoppel when it concluded that Bouchard was not entitled to reimbursement by the Department, we can affirm a judgment on rationale different than that relied on by the District Court. *Houde v. Millett*, 2001 ME 183, ¶ 9, 787 A.2d 757, 759.

[¶ 9] "The immunity of the sovereign from suit is one of the highest attributes inherent in the nature of sovereignty." *Drake v. Smith*, 390 A.2d 541, 543 (Me.1978). Although we have not heretofore had before us a case of a disestablished father seeking reimbursement for child support paid to the Department, we have decided a number of cases that are factually similar. In *Wellman v. Dep't of Human Servs.*, Wellman initiated a class action suit against the Department on behalf of unmarried but acknowledged fathers who had been ordered to reimburse the Department for public support payments made to the mothers of the plaintiffs' children. 574 A.2d 879, 881 (Me. 1990). We held that although the fathers had the right to challenge the recipients' eligibility, any relief awarded to the fa-

---

1. October 17, 2001, was the date that the Department acknowledged receiving notice of Bouchard's complaint.

2. After the DNA results returned, Frost revealed that a stranger sexually assaulted her during the period of possible conception. She testified that she blocked the assault from her memory, and it did not enter her mind that the assailant could be the father of her child.

thers could only be prospective because "sovereign immunity bars retroactive recovery of any previously made payments." *Id.* at 884. There was no distinction between the type of relief sought by Wellman and the type of relief sought in *Thiboutot v. State,* 405 A.2d 230, 237 (Me. 1979), in which we concluded that "sovereign immunity barred retroactive recovery of AFDC welfare underpayments ... at least when ... there is no allegation or evidence of bad faith, racial discrimination or other constitutionally impermissible purpose." *Wellman,* 574 A.2d at 884.

[¶ 10] Sovereign immunity also bars plaintiffs from retroactively recovering "pass-through" welfare benefits that are withheld by the Department. *Farley v. Dep't of Human Servs.,* 621 A.2d 404, 406–07 (Me.1993). In *Farley,* we noted that sovereign immunity is not confined to actions that seek damages from the State; it can also apply to declaratory judgment actions, to actions seeking retroactive welfare benefit underpayments, and it also applies to bar the retroactive recovery of payments made to the Department. *Id.* at 407–08.

[¶ 11] Finally, in *Moody v. Dep't of Human Servs.,* we held that sovereign immunity bars relief that relates solely to the payment of retroactive welfare benefits. 661 A.2d 156, 156 (Me.1995). We stated that "[a] retroactive award of monetary relief is in practical effect indistinguishable from an award of damages against the State." *Id.* at 158.

■ [¶ 12] The above cases demonstrate that the application of sovereign immunity is appropriate in this case. There is no statute that explicitly waives the State's immunity from this type of suit. Furthermore, the State's participation in a welfare benefits program is not an implied waiver of sovereign immunity. *See Drake,* 390 A.2d at 545. There is no indication that

the Department was acting in bad faith or for a constitutionally impermissible purpose when it collected child support payments from Bouchard; it was collecting payments pursuant to a voluntary acknowledgment of paternity, and until the results of the blood testing were returned, Frost had maintained that no one else could be the child's father. As *Wellman* established, if there is no evidence of waiver, bad faith, or a constitutionally impermissible purpose, then sovereign immunity bars the retroactive recovery of payments made to the Department, even if the recipient of the benefit is later determined to be ineligible. 574 A.2d at 884. Therefore, we conclude that sovereign immunity bars Bouchard from retroactively pursuing a claim against the Department for reimbursement of paid child support.

## B. Restitution

■ [¶ 13] Bouchard contends that he is equitably entitled to restitution from Frost because he justifiably relied on Frost's representation that only he could be the child's father. Bouchard relies on the RESTATEMENT OF RESTITUTION § 74 (1937), which states: "A person who has conferred a benefit upon another in compliance with a judgment ... is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable ...." Although we have previously acknowledged that section 74 is a recognition of an established principle of equity, *Plumbago Mining Corp. v. Sweatt,* 444 A.2d 361, 367 (Me.1982), we conclude that restitution is not legally permissible in this case.

■ [¶ 14] Child support in Maine is governed by statute. *State v. McCurdy,* 116 Me. 359, 361–62, 102 A. 72, 73 (1917) ("The duty to support such child is imposed by statute, and the same act provides for its enforcement.... The support

of ... children is provided for under the [statute] which makes adequate and exclusive provision for the enforcement of that duty."); *Wood v. Wood*, 407 A.2d 282, 285–86 (Me.1979) ("The authority of the divorce court over matters of ... the custody and support of minor children must be found in the statutes or it does not exist.") (internal quotations omitted). Nothing in Title 19–A permits a court to award restitution to a man who, without objection, pays child support for a child who is later determined not to be his.

[¶ 15] On the other hand, 19–A M.R.S.A. § 2009(2) (1998) specifically prohibits courts from retroactively modifying child support orders past the date that notice of a petition for modification has been served on the opposing party. We have previously explained that section 2009(2) prohibits courts from canceling child support arrearages by retroactively modifying a support obligation. In *Beck v. Beck*, the father contended that he should not have been required to pay the portion of child support arrearages that accumulated when his children lived with him. 1999 ME 110, ¶ 5, 733 A.2d 981, 983. We stated that when the children's living situation changed, Beck should have petitioned the court for a modification of the child support order instead of letting the arrearages accrue. *Id.* ¶ 8, 733 A.2d at 984. Section 2009(2) required Beck to pay those arrearages because courts lack the authority to retroactively alter child support obligations. *Id.*

█ [¶ 16] Section 2009(2) also bars actions for restitution by disestablished parents. Bouchard was obligated to pay child support pursuant to a valid order. The order, although it was prospectively voidable, was not void. Accordingly, section 2009(2) prohibits courts from retroactively modifying that order and awarding restitution to disestablished parents. Moreover, Bouchard has not demonstrated entitlement to any relief pursuant to M.R. Civ. P. 60(b). Nor do the facts of this case support his claim for equitable restitution. The District Court did not commit clear error or act beyond its discretion when it concluded that although Frost's testimony regarding what she knew about paternity and when she knew it was suspect, Bouchard was not entitled to retroactive relief. Competent evidence exists in the record to support the conclusion that Frost did not knowingly misrepresent paternity. Moreover, not only did Bouchard acknowledge paternity, he chose not to contest it for over eleven years. Finally, "[t]he manifest purpose of the support order is to provide for the child's welfare." *Wood*, 407 A.2d at 287. Ordering a parent who already receives public assistance to repay $22,695 of child support contravenes this purpose. Bouchard has failed to show that he is entitled to any relief.

The entry is:

Judgment affirmed.