STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-43

JAMES PALMER,

    Petitioner

ORDER

v.

MAINE DEPARTMENT OF
CORRECTIONS,

    Respondent



STATE OF MAINE
Cumberland ss. Clerk's Office
MAY 22 2015
RECEIVED

This matter is before the court on Petitioner James Palmer's Rule 80C appeal made pursuant to 5 M.R.S. § 11001 et seq. Palmer is appealing the denial of his grievance. He is challenging the Maine Department of Corrections' ("DOC") actions in disposing of and failing to compensate him for his television and sneakers.

The DOC has moved to dismiss Palmer's Amended Petition, which addresses not only Palmer's claim regarding his television, but also his claim regarding his sneakers.

Also pending is Palmer's Motion to Amend the Relief Sought to include relief in the form of replacement of his belongings, rather than solely in the form of monetary compensation. The court denies this Motion. This Motion was filed on January 29, 2015, over five months from when Palmer filed his original petition. Furthermore, seeking replacements of the property, which would cost the DOC monetarily, is akin to seeking monetary damages.

Palmer also submitted a Motion to Correct or Modify the Record, but failed to provide any proposals for changes to the record, and failed to make his Motion to Correct or Modify the

Record in a timely fashion. *See* M.R. Civ. P. 80C(f). Accordingly, Palmer's Motion to Correct or Modify is also denied.

I.  Factual and procedural background

This action first involves the confiscation and disposal of a television that Palmer brought from the Maine State Prison ("MSP") to the Maine Correctional Center ("MCC"). Palmer's history with the television began at the MSP, where the televison was allegedly damaged during a cell search on January 15, 2013. (R. 17, 30.) At the Maine State Prison he was compensated $125.00 for the damage done to the television. (R. 25.) The compensation amount was based on the age, depreciation, and wear and tear on the television, and was termed a "settlement." (R. 30.) It is disputed whether the $125.00 was to go specifically toward the purchase of a new television, and thereby Palmer was not supposed to be able to retain the television, or whether it was an unconditional payment to compensate Palmer for the damage to the televisions and the money could go toward the repair of the television. (R. 18-21, 29, 35). The Grievance Review Officer noted "It's been confirmed with MSP that the $125.00 was for replacement of your tv and not for repair. . . . The fact that there were errors in allowing you to maintain your contraband sneakers and TV doesn't mean that you can keep it now that it was discovered by our property Seargeant." (R. 35.) But the Grievance Review Officer did not note how he confirmed the information regarding the settlement, or why the television was not confiscated at the MSP, if it was supposed to be replaced. Palmer was permitted to have the television repaired by the Maine State Prison repair shop. (R. 19-20.) Palmer states that he paid $4.00 and a couple of bags of coffee for the repairs. (R. 20.)

The television was not confiscated from Palmer as a result of the settlement. (R. 18-19.) According to Palmer, the television was not separated from him until he was placed in the SMU

2

at the Maine State Prison on June 12, 2013. (R. 19.) He states that when he was transferred from the SMU at the Maine State Prison ("MSP") to the Maine Correctional Center ("MCC") on December 13, 2013, his television was also transferred to the MCC. (R. 19.) He alleges that the television was placed in storage, and once Palmer reached a level in March of 2014 where he was permitted to have a television he asked for his television to be returned to him. (R. 20.) He was informed by Sargent Dame that his television had been discarded in November of 2012 and DOC personal property records list the television as discarded on November 20, 2012, but the records are clearly inaccurate. (R. 20, 32, 34.)

On June 18, 2014, Superintendent Scott Landry wrote to Palmer:

It appears that MSP did not contraband your television but should have when you were compensated for it financially. For this reason, if your television is in our possession, it will be returned to you. If it is no longer in our possession, you will be compensated for it—again. You will also receive your sneakers back if they are still in property. If not, you will be compensated for those as well. (R. 41.)

Palmer was granted a settlement offer of $80.00 for the television, but he refused the settlement. (R. 44, 46, 49.) The television was discarded. (R. 45.) Palmer appealed, but the Commissioner denied his appeal. (R. 55.) Jody Breton, acting for the Commissioner, stated "The Superintendent went above and beyond to try to settle your grievance, but you refused. That offer is now withdrawn. This matter is now closed, and you will not be receiving any money beyond the $125.00 you accepted at MSP." (R. 55.)

Through his amended petition, Palmer has also raised the issue of the confiscation and destruction of his Nike sneakers. The prison officials often addressed the confiscation of the sneakers and the television simultaneously and the two issues were addressed as one grievance log. The Record concerns both the television and the sneakers. Palmer has argued that his sneakers were only worn three times and were worth $110.00. (R. 54.) It is disputed whether the

3

sneakers were included in prison property records (R. 26-27, 45.) Palmer has contested why the sneakers were destroyed when they were deemed contraband, and why he was not given the option of sending them home or donating them. (R. 27.) Palmer was made a settlement offer of $40.00 for the sneakers, which had been disposed of, but he rejected this offer as well. (R. 44-46, 54.) While the Commissioner's Decision did not mention the sneakers or the television specifically, it acted as a denial to both appealed issues joined into one grievance. (R. 55.)

While Palmer's original brief did not address the sneaker issue, on December 8, 2014, Palmer filed a Motion to Amend Petition stating that he was originally intending to raise the sneaker issue in a subsequent Complaint, but that as the Defendants joined the two issues in the grievance process he was now seeking to address both issues simultaneously. On January 12, 2015, this court granted Palmer's Motion to Amend. The DOC has moved to dismiss the sneaker issue from this petition on the grounds that Palmer failed to appeal the sneaker grievance in a timely manner, that the claim does not relate back to the filing of the original petition, and that the court therefore lacks jurisdiction over the sneaker claim. While the court acknowledges that in *Fournier v. Dep't of Corr.*, the Law Court held that the time limit for appealing a final agency action is a jurisdictional issue, and that the time limit is required to be applied "uniformly and consistently" to both represented and unrepresented parties, this action is distinguishable from *Fournier* in that Palmer timely filed his petition of his grievance. 2009 ME 112, ¶ 2, 983 A.2d 403 (Me. 2009). While he did not mention the sneakers initially, it was the DOC itself that made the sneakers a part of this appeal by joining them with the television into one grievance. The DOC's simultaneous handling of the sneakers with the television related the two issues to one another.

4

Since the DOC itself joined the two issues in the record it has submitted to this court, as both matters were dealt with simultaneously below, and as both issues can be analyzed and disposed of on the same grounds, the court will address both issues in this appeal.

II.  Standard of Review

In its appellate capacity, the court reviews agency decisions for "abuse of discretion, error of law, or findings not supported by the evidence." *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223.

The burden of proof is on a petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995). "Inconsistent evidence will not render an agency decision unsupported." *Id.* "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982).

The court must give great deference to an agency's construction of a statute it is charged with administering. *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10, 955 A.2d 223. "A court will 'not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record.'" *Kroeger v. Dep't of Environmental Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566 (quoted in Alexander, *Maine Appellate Practice* § 452 at 312 (4th ed. 2013)); *see also* 5 M.R.S.A. § 11007(4)(c).

Where there have been multiple levels of administrative decision-making, the most recent decision will be the one subject to Superior Court review, if the most recent decision-maker had

5

*de novo* capacity and/or the authority to conduct additional fact-finding. *See* Alexander, *Maine Appellate Practice* § 455(b) at 315; *see also Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 17, 15 A.3d 1263.

III.   Discussion

Palmer contends that the DOC took prejudicial action against his property rights. He wants to be made whole by receiving an award of $221.55 for the cost of a new television and $75.00 for a new pair of Nikes through the prison commissary. He also seeks filing fees.

He contends that the agency's actions were: in violation of constitutional and statutory provisions, exceeded the agency's authority; made based upon unlawful procedure; affected by bias and error of law; unsupported by substantial evidence on the record, and were arbitrary, capricious, and an abuse of discretion.

The DOC has argued that Palmer's appeal should be denied because of sovereign immunity, because there has been an accord and satisfaction, and because substantial evidence on the record supported the DOC's decision. After reviewing the record and the submissions from both parties, the court finds that there was not an accord and satisfaction and there was not substantial evidence in the record supporting the final agency action. The court finds, however, that sovereign immunity bars Palmer's claims for monetary damages.

"Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103. Palmer's claim that the DOC wrongfully disposed of his property and should now compensate him for his property can be interpreted as either a negligence or a conversion claim.

6

The DOC asserts that Palmer cannot make a claim for money damages from the Department. The DOC states that Palmer's claim does not fall within any of the sovereign immunity exceptions. *See* 14 M.R.S. § 8104-A.

"The immunity of the sovereign from suit is one of the highest attributes inherent in the nature of sovereignty." *Bouchard v. Frost*, 2004 ME 9, ¶ 9, 840 A.2d 109 (quoting *Drake v. Smith*, 390 A.2d 541, 543 (Me. 1978)). In *Hildebrandt v. Department of Environmental Protection*, where the Plaintiff sought money damages against the Department of Environmental Protection rather than equitable relief, the Law Court held that the claim for money damages was "precluded by the immunity provisions of the Maine Tort Claims Act, 14 M.R.S.A. § 8101 et seq. This statute states the legislative judgment in general, with particular exceptions carefully set out, that governmental entities are to be immune from tort claims for damages." 430 A.2d 561, 565 (Me. 1981).

The DOC has cited to a child support action where, following paternity testing revealing that he was not the father, a man sought money damages from the Department of Health and Human Services for child support he was incorrectly forced to pay for years. *Bouchard v. Frost*, 2004 ME 9, 840 A.2d 109. The Law Court ruled that owing to sovereign immunity Bouchard could not pursue a claim against the Department for reimbursement of the child support payments. *Id.* ¶ 9. It noted, "if there is no evidence of waiver, bad faith, or a constitutionally impermissible purpose, then sovereign immunity bars the retroactive recovery of payments made to the Department, even if the recipient of the benefit is later determined to be ineligible." *Id.* (citation omitted). In *Moody v. Commissioner, Dep't of Human Servs.*, the Law Court found that sovereign immunity could apply in an action involving notice relief even when "the prior notice given to the class members was inadequate and may have constituted a denial of due

7

process. The Department's actions were not in bad faith, and the notice was not deliberately inadequate because of some impermissible purpose." 661 A.2d 156, 159 (Me. 1995).

In this action, Palmer is seeking monetary damages against the DOC for the disposal of his property. Palmer's claim fails to fall under any of the exceptions to sovereign immunity found in § 8104-A. As a result, Palmer's claim for damages is barred. Accordingly, Palmer's appeal must be denied.

Accordingly, the court **ORDERS** that the Petitioner's Appeal is DENIED.

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _May 22, 2015_

Roland A. Cole
Justice, Superior Court